IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ISELEY, | : | CIVIL NO. 1:CV-05-0444 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JOHN TALABER , et al., | : | |
| Defendants | : | |

**M E M O R A N D U M**

**I.     Introduction**

Plaintiff Charles Iseley filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 2, 2005. He is currently an inmate housed at the State Correctional Institution at Somerset, Pennsylvania. Named as Defendants are Jeffrey Beard, Secretary of the Department of Corrections ("DOC") and John Talaber, assistant counsel for the DOC. Plaintiff alleges that Defendants denied him access to publications and, thereafter, retaliated against him by ordering their destruction due to his filing of a state court mandamus action against Beard regarding the confiscation. Talaber served as Beard's counsel in the state action. Plaintiff claims that he was "singled out" and, as a result of Defendants' actions, was unable to use some of the destroyed publications as exhibits in his underlying state court action. Plaintiff seeks a declaratory judgment and damages for the violation of both the First Amendment and the Equal Protection clause. Presently pending before the Court is Defendants' motion for summary judgment (Doc. No. 121). For the reasons that follow, the motion will be granted.

**II.    Background**

In March of 2003, while confined at the State Correctional Institution at Pittsburgh, Pennsylvania, Plaintiff was transferred to the Long Term Segregation Unit ("LTSU") within the

prison.  The LTSU is the most restrictive maximum security housing within the DOC and is designed for high-risk inmates.  The LTSU offers extremely limited programming and privileges.  The LTSU Program has four (4) levels, with Level 4 being most restrictive.  At the time relevant to the incidents alleged in the complaint, Plaintiff was in Level 3.  While confined in the LTSU, certain publications were confiscated from Plaintiff.  As a result, Plaintiff filed a petition for writ of mandamus in the Commonwealth Court of Pennsylvania challenging the denial of the publications, and naming Defendant Beard as the respondent (Doc. No. 28, Docket Sheet in Iseley v. Beard, 841 A.2d 168  (Pa. Commw. 2004)).  Defendant Talaber represented Beard in the mandamus action.  Plaintiff contends that he had planned to use the confiscated publications as exhibits in his mandamus action.  However, Plaintiff contends that in June of 2003, in retaliation for his filing of the state court action, Beard and Talaber "singled him out" and ordered that the confiscated, as well as any incoming publications, be destroyed.  Due to the alleged destruction of the publications, Plaintiff claims he was unable to use them as exhibits in his state action.

  On January 23, 2004, the mandamus petition was dismissed due to Plaintiff's failure to exhaust available state remedies.  In addition, the Commonwealth Court found that a valid, rational connection existed between the prison regulation and the legitimate and neutral governmental interest of rehabilitation and prison security put forward by Beard to justify the publication ban. (Id., 841 A.2d at 174.)  As a result, Beard's cross motion for summary relief was granted.  On March 2, 2005, Plaintiff filed the instant action wherein he contends that the Defendants violated the First Amendment and the Equal Protection Clause by singling him out and confiscating and destroying his publications in retaliation for his filing of the state action.

**III.     Standard**

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the burden then shifts to the non-moving party. The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading." Saldana, 260 F.3d at 232. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be disregarded. Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000). The court may not consider evidence on a motion for summary judgment that would not

be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citations omitted).

**IV.     Discussion**

Following the Court's ruling on Defendants' motion for judgment on the pleadings, Plaintiff's remaining claim is that Defendants ordered the destruction of his publications in retaliation for his filing the mandamus action in state court. Defendants seek summary judgment on the basis that Plaintiff has failed to exhaust this claim.     Exhaustion of administrative remedies by an incarcerated person suing over matters arising out of his confinement is mandated by 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

"This provision makes no distinction between an action for damages, injunctive relief, or both. The exhaustion requirement is mandatory, whether or not the administrative remedies afford the inmate-plaintiff the relief sought in the federal court action." Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000). "[I]t is beyond the power of [any] court ... to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement. Nyhuis, 204 F.3d at 71. Thus, prisoners are required to exhaust available administrative remedies prior to seeking relief

4

pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S.Ct. 910, 918-19 (2007). Nevertheless, "failure to exhaust is an affirmative defense that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her administrative remedies before commencing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id at 2386. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Id. at 2387 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. Id. at 232.

The Pennsylvania Department of Corrections has established a Consolidated Inmate Grievance Review System as set forth in DC-ADM 804. With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Officer; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Superintendent; and a final written appeal may be presented to the Secretary's Office of Inmate

Grievances and Appeals.

In support of the pending motion, Defendants rely on the unsworn declaration of Kristen Reisinger, Assistant Chief Grievance Coordinator in the Secretary's Office of Inmate Grievances and Appeals for the DOC. (Doc. No. 28, Ex. 4, Reisinger Declar.) Reisinger avers that a review of all final appeals establishes the following with regard to grievances filed by Plaintiff concerning the issues raised in the instant action. In March of 2003, Plaintiff filed a grievance (#46600) with regard to the number of boxes of "legal material" he was permitted to possess while in the LTSU. Although this grievance was appealed to the institution's superintendent, no appeal was filed at the final level with the Secretary's Office. (Id. at ¶ 4.) A second grievance (#46601) was thereafter filed wherein Plaintiff asserted his need for publications and internet material for litigation. While Plaintiff did appeal this grievance to the Superintendent, and thereafter to the Secretary's Office, the appeal was incomplete. Although he was given additional time to perfect the appeal, Plaintiff did not do so. (Doc. No. 114, Iseley Declar., Ex. 4.)

Eight other grievances were thereafter filed by Plaintiff concerning issues related to his publications. With respect to grievances #49695, #51793, #55857, #56414, #62413 and #70679, no final appeals were filed with the Secretary's Office. With respect to grievances #48750 and #54666, appeals were filed with the Secretary's Office but were deficient. Plaintiff was provided with additional time to perfect the appeals, but failed to do so. (Id. at ¶ 6.) As such, of the ten (10) total grievances Plaintiff filed regarding issues in this action, he only attempted to appeal three (3) of these grievances (#46601, #48750 and #54666) to the final level of review, but failed to perfect the incomplete appeals. (Id. at ¶ 7.) Based on the foregoing, Defendants maintain

6

that Plaintiff has failed to exhaust his administrative remedies.

In opposing Defendants' exhaustion argument, Plaintiff contends that exhaustion of his retaliation claim was not required because the DOC's administrative remedy system was "not available" to him. (Doc. No. 126, at 4.) Specifically, he argues that prison officials "prevented/barred him from obtaining necessary photocopies for final appeals," thereby thwarting his efforts to utilize the grievance system. As such, he maintains that exhaustion must be excused. (Id.) He specifically argues that his efforts were impaired by prison officials with regard to grievances #46600 and #46601.

Prisoners are only required to exhaust such administrative remedies "as are available." 42 U.S.C. § 1997e(a). "Available" remedies are those "capable of use" or those "at hand." Brown, 319 F.3d at 113. "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it." Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(prisoner lacked available administrative remedy where prison officials refused to provide him with necessary forms).

In support of his argument that he attempted to exhaust his retaliation claim, but was prevented from doing so by prison officials, Plaintiff relies on his declaration submitted earlier in this action in opposition to Defendants' motion for judgment on the pleadings and the exhibits attached thereto. (Doc. No. 114.) However, in reviewing these documents, it is clear that they do not create a genuine issue of material fact as to whether the retaliation claim was exhausted for the following reasons.

It is undisputed that Plaintiff did file appeals from grievances #46601, #48750 and #54666 with the Secretary's Office of Inmate Grievances and Appeals, but that they were filed

7

without action because they were incomplete.  It also appears from the record, however, that Plaintiff also filed an appeal to said office with regard to grievance #46600, and it was filed without action on the same basis.  (Doc. No. 114, Iseley Declar., Ex. 4.)  While Plaintiff does not challenge his failure to fully exhaust his available administrative remedies with regard to grievances #48750 and #54666, he does contend that exhaustion should be deemed "unavailable" with regard to grievances #46600 and #46601 because prison officials impaired his ability to fully exhaust to the final level of appeal.

In support of his argument, Plaintiff submits a letter from the Secretary's Office of Inmate Grievances and Appeals evidencing that Plaintiff's appeals regarding #46600 and #46601 were filed, without action, because they were incomplete.  (Id. at Ex. 4.)  The date of this letter, however, is April 11, 2003, at least two months prior to the time the alleged retaliation even occurred.  Thus, while Plaintiff tries to argue his efforts to exhaust his retaliation claim were somehow foiled, it is clear that the retaliation issue could not possibly have been raised in either of said grievances, as the alleged retaliatory actions had not even yet occurred.  Clearly, any reliance by Plaintiff on any alleged actions by prison officials related to those grievances in opposing the instant motion are irrelevant.[1]

Plaintiff also argues that unidentified staff members at the prison informed him that he

---

[1] In advising Plaintiff in the April 11, 2003 letter that his appeals were incomplete, the Secretary's Office instructed Plaintiff how to obtain the photocopies necessary to perfect his appeal. (Doc.No. 114, Exs. 5, 6.)  Plaintiff argues that he thereafter wrote a letter to the Secretary's Office stating that he could not obtain the photocopies.  According to Plaintiff, he never received a response to his letter, and therefore believes that the failure to respond by the Secretary's Office prevented him from exhausting grievances #46600 and #46601.  Again, this fails to create any issue of fact with regard to whether the retaliation claim pending before the Court was exhausted.  There is no question that grievances #46600 and #46601 did not raise the retaliation claim, as they pre-dated the occurrence of the alleged retaliation.

was not able to file a grievance against DOC staff who were not stationed at the prison (Doc. No. 114, Iseley Declar. at 1).  Any attempt by him to rely on this argument is clearly undermined by the undisputed record in this action.  Even assuming any staff members did make such comments, this clearly did not thwart any effort by Plaintiff to exhaust his claims.  He admits that he ignored such comments and pursued grievances, including the above referenced grievances, as clearly evidenced by the record in this case.  (Id. at ¶ 2.)

There are no evidentiary materials submitted by Plaintiff which support an inference that he submitted a grievance with regard to his retaliation claim, and that said grievance was either fully exhausted through the final level of appeal in the prison grievance system, or that Plaintiff was somehow prevented from exhausting any such grievance raising the retaliation claim.[2]

Accordingly, Defendants' motion for summary judgment will be granted on the basis of failure to exhaust.  Based on the Court's conclusion herein, the alternative arguments raised by Defendants in support of summary judgment will not be addressed.  An appropriate order follows.

---

[2] Plaintiff also appears to rely on two additional documents regarding appeals from grievances #64674 and #65447.  (Doc. No. 114, Exs. 1, 2.)  These documents are correspondence to Plaintiff from William S. Stickman, Superintendent at SCI-Pittsburgh at the relevant time, and inform Plaintiff that his referenced appeals regarding his disputes over "court documents" would not be handled through the prison because Plaintiff was currently pursuing litigation in the Commonwealth Court and was making his arguments in said venue.  Based on the foregoing, it is clear that these grievances related to the confiscation issue that was pending before the state court and Plaintiff's attempt to obtain the publications, and did not relate to any alleged retaliation that occurred thereafter.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES ISELEY, | : | CIVIL NO. 1:CV-05-0444 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JOHN TALABER , et al., | : | |
| Defendants | : | |

# **O R D E R**

**AND NOW,** on this 20th day of March, 2009, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED** as follows:

1.  Defendants' Motion for Summary Judgment (Doc. No. 121) is **GRANTED**.

2.  The Clerk of Court is directed to **ENTER JUDGMENT** in favor of Defendants and against Plaintiff.

3.  The Clerk of Court is further directed to **CLOSE** this case file.


 S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania